BENJAMIN B. WAGNER
United States Attorney
HEIKO P. COPPOLA
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2770



**FILED**

FEB 1 8 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:10-CR-0471 EJG |
| | ) | |
| Plaintiff, | ) | **PLEA AGREEMENT** |
| | ) | |
| v. | ) | DATE: |
| | ) | TIME: 10:00 a.m. |
| BRET JAMES GRAVELINE, | ) | COURT: Edward J. Garcia |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**I.**

**INTRODUCTION**

**A.  Scope of Agreement**:  The information in this case charges the defendant with making a false statements in violation of 18 U.S.C. § 1001.  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or

1

1  regulatory authorities.

2  **B. Court Not a Party:**  The Court is not a party to this plea
3  agreement.  Sentencing is a matter solely within the discretion of
4  the Court, the Court is under no obligation to accept any
5  recommendations made by the government, and the Court may in its
6  discretion impose any sentence it deems appropriate up to and
7  including the statutory maximum stated in this plea agreement.  If
8  the Court should impose any sentence up to the maximum established by
9  the statute, the defendant cannot, for that reason alone, withdraw
10  his guilty plea, and he will remain bound to fulfill all of the
11  obligations under this plea agreement.  The defendant understands
12  that neither the prosecutor, defense counsel, nor the Court can make
13  a binding prediction or promise regarding the sentence he will
14  receive.

15                                    II.

16                         **DEFENDANT'S OBLIGATIONS**

17  **A. Guilty Plea:**  The defendant will plead guilty to the single
18  count information charging him with making false statements in
19  violation of 18 U.S.C. § 1001.  The defendant agrees that he is in
20  fact guilty of these charges and that the facts set forth in the
21  Factual Basis For Plea attached hereto as Exhibit A are true,
22  accurate and establish the elements of the crime charged beyond a
23  reasonable doubt.

24       **1. Waiver of Indictment:**  The defendant agrees that, at
25  the entry of plea proceeding, he will sign a written waiver of
26  prosecution by indictment and consent to proceed by information
27  rather than by indictment.

28       **B. Special Assessment:**  The defendant agrees to pay a special

                                    2

assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable by the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### III.

### THE GOVERNMENT'S OBLIGATIONS

A. Recommendations:

1. **Incarceration Range:** The government will recommend that the defendant be sentenced within the guideline range for his offense as determined by the United States Probation Office.

2. **Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in the defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### IV.

1

**ELEMENTS OF THE OFFENSE**

2     **A.   Elements of the Offense:**  At a trial, the government would
3   have to prove beyond a reasonable doubt the following elements of the
4   offense(s) to which the defendant is pleading guilty, specifically,
5   making false statements:

6     First the defendant used a writing which contained a false
7   statement in a matter within the jurisdiction of the Bureau of
8   Alcohol, Tobacco, Firearms and Explosives;

9     Second, the defendant acted willfully, that is deliberately and
10   with knowledge that the statement was untrue; and

11     Third, the statement was material to the Bureau of Alcohol,
12   Tobacco, Firearms and Explosives' activities or decisions.

13     A statement is material if it could have influenced an agency's
14   decisions or activities.

15                                    **V.**

16                           **MAXIMUM SENTENCE**

17     **A.   Maximum Penalty:**  The maximum sentence that the Court can
18   impose is five years of incarceration, a fine of $250,000, a three
19   year period of supervised release and a special assessment of $100.

20     **B.   Violations of Supervised Release:** The defendant understands
21   that if he violates a condition of supervised release at any time
22   during the term of supervised release, the Court may revoke the term
23   of supervised release and require the defendant to serve up to two
24   additional years imprisonment.

25                                    **VI.**

26                       **SENTENCING DETERMINATION**

27     **A.   Statutory Authority:**  The defendant understands that the
28   Court must consult the Federal Sentencing Guidelines (as promulgated

                                     4

1  by the Sentencing Commission pursuant to the Sentencing Reform Act of
2  1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
3  modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>,
4  543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into
5  account when determining a final sentence.  The defendant understands
6  that the Court will determine a non-binding and advisory guideline
7  sentencing range for this case pursuant to the Sentencing Guidelines.
8  The defendant further understands that the Court will consider whether
9  there is a basis for departure from the guideline sentencing range
10  (either above or below the guideline sentencing range) because there
11  exists an aggravating or mitigating circumstance of a kind, or to a
12  degree, not adequately taken into consideration by the Sentencing
13  Commission in formulating the Guidelines.  The defendant further
14  understands that the Court, after consultation and consideration of
15  the Sentencing Guidelines, must impose a sentence that is reasonable
16  in light of the factors set forth in 18 U.S.C. § 3553(a).

17  **B.   Stipulations Affecting Guidelines Calculation:**  The
18  government and the defendant agree that there is no material dispute
19  as to the following sentencing guidelines variables and therefore
20  stipulate to the following:

21       **1.   Base Offense Level:** Six

22       **2.   Acceptance of Responsibility:**  See paragraph III(B)(2)
23       above

24       **3.   Departures or Other Enhancements or Reductions:** The
25  defendant may seek any sentence the defendant believes is appropriate.
26                                  **VII.**
27                                **WAIVERS**
28  **A.   Waiver of Constitutional Rights:**  The defendant understands

                                     5

that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B.   Waiver of Appeal and Collateral Attack:**  The defendant understands that the law gives him a right to appeal his conviction and sentence.  He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the top of the Sentencing Guidelines range determined by the Court. He specifically gives up his right to appeal any order of restitution the Court may impose.

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence.  He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

Notwithstanding the agreement in paragraph III. A. above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would

6

1  otherwise be barred by this plea agreement.  The decision to pursue
2  any or all of these options is solely in the discretion of the United
3  States Attorney's Office.  By signing this plea agreement, the
4  defendant agrees to waive any objections, motions, and defenses he
5  might have to the government's decision.  In particular, he agrees not
6  to raise any objections based on the passage of time with respect to
7  such counts including, but not limited to, any statutes of limitation
8  or any objections based on the Speedy Trial Act or the Speedy Trial
9  Clause of the Sixth Amendment.

10  **C.  Waiver of Attorneys' Fees and Costs:**  The defendant agrees to
11  waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119
12  (Nov. 26, 1997), to recover attorneys' fees or other litigation
13  expenses in connection with the investigation and prosecution of all
14  charges in the above-captioned matter and of any related allegations
15  (including without limitation any charges to be dismissed pursuant to
16  this plea agreement and any charges previously dismissed).

17  **D.  Waiver of DNA Testing:**  Defendant has been advised that the
18  government has in its possession items of physical evidence that could
19  be subjected to DNA testing.

20  The defendant understands that the government does not intend to
21  conduct DNA testing of any of these items.

22  Defendant understands that, before entering guilty plea pursuant
23  to this plea agreement, he could request DNA testing of evidence in
24  this case.  The defendant further understands that, with respect to
25  the offense(s) to which he is pleading guilty pursuant to this plea
26  agreement, he would have the right to request DNA testing of evidence
27  after conviction under the conditions specified in 18 U.S.C. § 3600.
28  Knowing and understanding his right to request DNA testing, the

7

1  defendant knowingly and voluntarily gives up that right with respect
2  to both the specific items listed above and any other items of
3  evidence there may be in this case that might be amenable to DNA
4  testing.   The defendant understands and acknowledges that by giving up
5  this right, he is giving up any ability to request DNA testing of
6  evidence in this case in the current proceeding, in any proceeding
7  after conviction under 18 U.S.C. § 3600, and in any other proceeding
8  of any type.   The defendant further understands and acknowledges that
9  by giving up this right, he will never have another opportunity to
10 have the evidence in this case, whether or not listed above, submitted
11 for DNA testing, or to employ the results of DNA testing to support a
12 claim that defendant is innocent of the offense(s) to which he is
13 pleading guilty.

14                                VIII.

15                        ENTIRE PLEA AGREEMENT

16      Other than this plea agreement, no agreement, understanding,
17 promise, or condition between the government and the defendant exists,
18 nor will such agreement, understanding, promise, or condition exist
19 unless it is committed to writing and signed by the defendant, counsel
20 for the defendant, and counsel for the United States.

21                                IX.

22                      APPROVALS AND SIGNATURES

23      A.   Defense Counsel:   I have read this plea agreement and have
24 discussed it fully with my client.   The plea agreement accurately and
25 completely sets forth the entirety of the agreement.   I concur
26 in my client's decision to plead guilty as set forth in this plea
27 agreement.

28

1   DATED: _____2/18/2011_____                    _____
                                                     DONALD KILMER
2                                                    Attorney for Defendant

3       **B.   Defendant:**  I have read this plea agreement and carefully

4   reviewed every part of it with my attorney.  I understand it, and I

5   voluntarily agree to it.  Further, I have consulted with my attorney

6   and fully understand my rights with respect to the provisions of the

7   Sentencing Guidelines that may apply to my case.  No other promises or

8   inducements have been made to me, other than those contained in this

9   plea agreement.  In addition, no one has threatened or forced me in

10  any way to enter into this plea agreement.  Finally, I am satisfied

11  with the representation of my attorney in this case.

12

13  DATED: ____2-18-2011____                         _____
                                                     BRET JAMES GRAVELINE, Defendant
14

15
        **C.   Attorney for United States:**  I accept and agree to this plea
16
    agreement on behalf of the government.
17
    DATED: _____2-18-11_____                       BENJAMIN B. WAGNER
18                                                    United States Attorney

19

20                                                   By: _____
                                                     HEIKO P. COPPOLA
21                                                   Assistant U.S. Attorney

22

23

24

25

26

27

28

                                        9

1

2

**EXHIBIT "A"**

3

**Factual Basis for Plea**

4    On September 26, 2006, Ron Arnedt went to Great Outdoors
(Formerly Great Guns), a FFL dealer in Sacramento, California.   Mr.
5    Arnedt presented Great Outdoors with a copy of an FFL license issued
to Bret GRAVELINE and an invoice from Nimrod Rifles stating that "Ron
6    Arnedt is acting on behalf of Nimrod Rifles to pick up or deliver
firearms on my FFL."   Below this statement appears GRAVELINE's
7    signature. The license presented by Arendt on behalf of GRAVELINE
displays the license number of 9-68-017-01-5L-00585 and an expiration
8    of August 1, 2007.   The 5L portion of the license number denotes an
expiration date of November 2005 which is the actual date that
9    GRAVELINE's ATF License expired.   The expiration date section had been
apparently changed to reflect an expiration date of August 1,
10   2007. Just below the license information is a certification statement
in which GRAVELINE's signature appears stating that this license is a
11   "true copy of a license issued to me".

12   On September 29, 2006, IOI Deborah Lentsch of the Sacramento ATF
emailed Arendt and asking about this transaction. Arendt stated the
13   following in his email reply the same day: "I did pick up firearms
from Great Guns.   I believe the manufacturer and model are correct. I
14   do not know the serial #S. I do not recall the date, but it was prior
to the Granite Bay SCI fundraiser on April 1, 2006. I delivered them
15   to Badger John's Huntin Stuff.   I do not have a FFL. I made the
transfer at the request of Brett Graveline and supplied a copy of his
16   FFL given to me by him to effect the transfer."

17   On November 21, 2006, a Curios and Relics (C&R) Licensee in
Garden Valley, California, Kenneth Womack won the bid for a Remington
18   Model 4, .32 caliber rifle from Mr. John Bennett of Landsdale, PA. The
gun was listed on Gunbroker.com.   Mr. Bennet stated that he would not
19   send the gun to Mr. Womack directly, because he was not comfortable
sending the firearm to a California C&R dealer.   Mr. Womack then
20   provided a copy of a Federal Firearms License (FFL) issued to Bret
GRAVELINE of Nimrod Rifles. Mr. Bennet noticed that the number encoded
21   in the actual license for the expiration date (5L) did not match the
expiration date listed on the license (August 1, 2007). Mr. Bennett
22   then contacted local ATF IOI Jeremy Rosenman.   IOI Rosenman conducted
a search in the Federal Licensing System (FLS) and discovered that
23   GRAVELINE, is license expired in November 2005 and that GRAVELINE
failed to renew his license. IOI Rosenman referred the case to the
24   Sacramento ATF Office.   The copy sent by Womack contains a
certification statement in which GRAVELINE's signature appears stating
25   that this license is a "true copy of a license issued to me", just
below the license information.   ATF Special Agent Erik Crowder
26   compared the signatures on this license to the one the previous one
and to GRAVELINE's driver's license, all appear to be the same.
27   On December 13, 2006, IOI Roger Root of the Sacramento Office of the
ATF verified with ATF licensing specialist Sybil Ownbey that GRAVELINE
28   did not renew his license and has not filed an application using a new
name or number.   IOI Root having conducted the last compliance

A-1

1  inspection at GRAVELINE's, recalled that he GRAVELINE was
2  predominantly a gunsmith and that he used a local retail dealer (The
   Buck Stop) to transfer firearm to non-licensees.   IOI Root contacted
3  Terri Klozko, the owner of The Buck Stop, and requested a copy of the
   license that GRAVELINE used to transfer firearms. This license also
4  appeared to be fraudulent.   It is again believed that GRAVELINE
   changed the encoding in the FFL number (8L) to match the expiration
5  date listed on the license (November 2008). Just below the license
   information is a certification statement in which GRAVELINE's
6  signature appears stating that this license is a "true copy of a
   license issued to me". This license more then any of the other
7  examples is most blatant example of the alleged forgery. Within the
   expiration date line one can clearly see the overlap where another
8  date strip was applied to the existing license.   Within the FFL code
   itself one can clearly see the overlap where another date strip was
9  applied to the existing license so that it coincided with the
   expiration date below.

10      On February 23, 2007, ATF Special Agent Erik Crowder went onto
11  the World Wide Web and searched for a business webpage for Nimrod
    Rifles. SA Crowder located one at http://nimrodrifles.tripod.com, its
12  first page states the following: "Nimrod Rifles has been in business
    for over 22 years with experienced full time gunsmiths specializing in
13  custom varmint hunting and custom bench rest rifles. We offer complete
    and comprehensive hunting rifle systems. Our rifles have been used by
14  satisfied and successful hunters on all North American and African
    game. Whatever your needs... whatever your wants... we work to give
15  you the one rifle you can depend on out in the field. Our office hours
    are Wednesday through Saturday by appointment only. To make an
16  appointment please call us at 530-622-2508 and leave a message. An
    experienced gunsmith will return you call as soon as possible." Page 2
17  of Nimrod Rifle's webpage went into prices for complete rifle
    buildups, some with owner supplied receivers and others that did not
18  specify who was supplying the receiver.

19      On February 26, 2007, IOI Root contacted the Out of Business
    (OOB) records center and verified that GRAVELINE has not sent the
20  required documents to them as required in 27 CFR 478.127.

21      On February 26, 2007, SA Crowder contacted Clair Walker of the El
    Dorado County Treasurer and Tax Collector's Office, Ms. Walker is in
22  charge of business licenses for El Dorado County. Ms. Walker stated
    that Nimrod Rifles' license expired on August 1, 2004. Ms. Walker
23  further stated that once a license expires the person licensed must
    contact El Dorado County and inform them that the licensed person is
24  no longer going to be in business.   This is to ensure that businesses
    are not operating without a license. Nimrod Rifles has failed to
25  comply with these requirements as of the date of this affidavit.

26      On March 2, 2007, IOI Root went to Great Outdoors (formerly Great
    Guns) and verified that three (3) firearms were transferred to Nimrod
27  Rifles (Browning, Model A-Bolt, serial number 75409NV8C7, Browning,
    Model A-Bolt, serial number 39450MM351 and Browning, Model A-Bolt,
28  serial number 06879MV351) on March 15, 2006. IOI Root then went to
    Badger Johns Huntin Stuff, a Sacramento FFL, and confirmed that these

1  three aforementioned rifles were transferred to Badger Johns Huntin
   Stuff from Nimrod Rifles on March 27, 2006.  This transfer occurred
2  during a time period when Nimrod Rifle's not only did not have a
   county business license but also no longer had an ATF license.
3

4      On March 16, 2007, ATF agents and task force officers served
   Federal Search Warrant 2:07-SW-0065 EFB, on Bret GRAVELINE (DOB
5  05/20/1958) and his business, Nimrod Rifles, 6560 B, Commerce Way,
   Diamond Springs, California.  The seized items included over 100
6  firearms, records, miscellaneous documents and some cash and/or checks
   that were linked to his unlicensed business.  During the course of the
   search warrant GRAVELINE was read a Miranda warning by SA Crowder and
7  in the presence of Special Agent Sara Lewis. GRAVELINE acknowledged
   the warning and waived his rights and was subsequently
8  interviewed. GRAVELINE stated that he knew his FFL license was forged
   and that he had done it. When asked as to how he did it, GRAVELINE
9  stated that he cut out a piece of paper, overlaid it and copied it.

10     On or about May 30, 2007, IOIs Roger Root and Cathy Lisec at SA
   Crowder's request examined the documents that were taken pursuant to
11 above referenced search warrant.  During the course of their
   examination several new items were broken out into their own evidence
12 numbers. Within these documents was located the original fraudulent
   FFL license that was being sent out as a true and accurate
13 representation to other FFLs. It had been crudely constructed by over
   laying a piece of paper with a valid date over a copy of GRAVELINE's
14 license.  This is consistent with how GRAVELINE had stated he had
   forged his license.
15

16     Based upon the above enumerated facts not only was GRAVELINE's
   FFL license being circulated as a true and accurate government
   produced document, when in reality it had been forged by GRAVELINE,
17 but it had also been received by numerous FFLs as being a true and
   accurate document. These two facts facilitated transfers of firearms
18 based upon the fraudulent document.  If an ATF IOI were to audit the
   aforementioned FFLs, he/she would likely accept the forged document as
19 true and accurate. It would only be upon closer inspection and/or a
   query of the FFL number that was provided on the copy that the
20 fraudulent document's true nature would be discovered.  The IOI would
   be powerless to inspect as the IOI's power of inspection is derived by
21 the person being licensed.  Therefore if one is not validly licensed
   an IOI cannot inspect, thus negatively impacting the ATF's ability to
22 regulate the sale and transportation of firearms.  The matter must
   then be referred to a Special Agent to follow up with a criminal
23 investigation and subsequently a search warrant as occurred in this
   case.
24

25

26

27

28

                                   A-3